**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

-vs-                                                                    Case No. 6:05-cr-87-Orl-18DAB

**JOSEPH REGINALD THOMPSON**

---

**ORDER**

**I. Background and History**

On May 18, 2005, an indictment was returned against Defendant for drug trafficking and possession of a firearm (Doc. 1). Defendant was ordered detained pending trial (Doc. 11). At a status conference on August 18, 2005, counsel for the government suggested that Defendant undergo a psychological examination, which was confirmed by a written motion (Doc. 22). The motion was predicated on a 2005 report by Dr. Jeffrey Danzinger which concluded that Defendant was not competent to stand trial in state court due to mental illness. The Court granted the motion and ordered the government to arrange for a psychiatric examination of Defendant pursuant to 18 U.S.C. § 4241 (Doc. 24).

Defendant was sent to the Federal Detention Center at Seatac, Washington, for a forensic evaluation. Defendant arrived at Seatac on October 6, 2005. During his stay there, he was interviewed, observed and given various psychological tests. His legal and medical records were also reviewed, including Dr. Danzinger's report. Seatac's IQ testing (which they deemed reliable) indicated that Defendant is functioning at an extremely low IQ level of 56. Achievement testing

confirmed this, reflecting educational skills at the first- and second-grade level, resulting in a diagnosis of mild mental retardation. Defendant was also diagnosed with paranoid schizophrenia. Although prior diagnoses had suggested that Defendant might be malingering, Seatac observed no exaggeration or feigning during its evaluation. In sum, Seatac concluded that Defendant's mental retardation and psychotic illness would substantially impair his present ability to understand the nature and consequences of the court proceedings and impair his ability to assist counsel in his defense.

Following receipt of the Seatac report, a competency hearing was held before the undersigned on December 13, 2005. At that hearing, the Court found that Defendant was suffering from a mental disease – specifically, schizophrenia – and mental retardation, which rendered him mentally incompetent to stand trial (Doc. 40). Accordingly, pursuant to 18 U.S.C. § 4241(d)(1), Defendant was committed to the custody of the U.S. Attorney General for hospitalization and treatment.

By report dated May 28, 2006, the Bureau of Prisons (Butner) found that Defendant was competent to stand trial. At a status conference on September 21, 2006, the trial was continued to allow time for an additional psychiatric examination (Doc. 52).

On October 3, 2006, the Court appointed Dr. Eric Mings to further evaluate Defendant (Doc. 54). Following receipt of Dr. Mings' report, another competency hearing was held before Magistrate Judge Spaulding on November 30, 2006. Based on Dr. Mings' finding that Defendant was not competent, Judge Spaulding again committed Defendant for treatment and recommended that he be hospitalized at a facility other than Butner (Doc. 68). Accordingly, Defendant was placed at the U.S. Medical Center for federal prisoners at Springfield, Missouri.

On April 13, 2007, Springfield issued its report, finding that Defendant was competent to stand trial. The report, authored by Richard L. DeMier, Ph.D., concluded that Defendant was not suffering from a mental illness, and that though he was of low intelligence, he had sufficient mental capacity to stand trial. In response, counsel for Defendant asked that Dr. Mings be allowed to re-examine the Defendant, and the Court granted this request.

In Dr. Mings' report dated May 23, 2007, he opined that Defendant suffers mild to moderate mental retardation, and likely also suffers from a psychotic illness which is probably some form of schizophrenia. Consequently, Dr. Mings concluded that Defendant was not competent to stand trial.

Given these conflicting psychological assessments, the Court held an evidentiary competency hearing on July 30, 2007. At that hearing, Dr. DeMier and Dr. Mings both testified. Following the hearing, the Court listened to various recorded telephone conversations which defendant made to family and others while in custody at Springfield. A final hearing for oral argument was held on August 28, 2007.

## II. The Evidence

Dr. Danzinger's report dated July 2, 2005 was rendered in connection with a state court proceeding. Dr. Danzinger had seen Defendant previously in 2000 regarding juvenile charges. In the prior report, Dr. Danzinger obtained history from Defendant's mother, which showed that Defendant had been late to reach various developmental milestones. For example, he was not toilet-trained until the age of 3, he was slow to talk and could not speak understandably until age 6. He did not walk until he was two and a half years old. He was a slow learner and was always in

special education classes. In his 2000 report, Dr. Danzinger concluded that Defendant suffered from mental retardation and was, therefore, not competent to proceed.

Upon re-evaluation in 2005, Dr. Danzinger obtained updated history and interviewed Defendant. He again concluded that Defendant was not competent to proceed. This opinion was based on Defendant's history of mental retardation and psychotic illness. While recognizing that Defendant could potentially be malingering, he concluded that "nevertheless, it is my opinion, based upon the history and review of records, as well as my own interview, that this defendant is most likely genuinely psychiatrically ill." The Seatac report essentially confirmed Dr. Danzinger's diagnosis and noted that Defendant's prognosis was extremely poor, with mental retardation being the primary disorder impacting his competency.

The staff at Butner had a different view. First, it ruled out the previous diagnosis of psychotic disorder (schizophrenia), because Defendant's symptoms were not consistent with that disorder. Second, while recognizing that Defendant had borderline intellectual functioning, it rejected a diagnosis of mental retardation. This conclusion was based on Defendant's lack of cooperation and test results, which in their opinion revealed someone who might be exaggerating existing cognitive weaknesses in order to appear substantially impaired. Accordingly, Butner reached a primary diagnosis of malingering. This diagnosis, however, does not provide any definitive indication of Defendant's true intellectual capacity.

In rendering his evaluation in November 2006, Dr. Mings reviewed a large number of public school records, indicating that Defendant had consistently been placed in educable mentally handicapped classes throughout his school years. His individual education plan dated January 24, 2002 noted that Defendant remained in mentally handicapped classes and had reading, math and

language skills at the first- to second-grade level.  Dr. Mings also reviewed the prior reports authored by Dr. Danzinger and the Seatac report, all of which indicated mental retardation at a level which precluded competency.  Following his return from Butner, Defendant was evaluated at the Orange County jail and diagnosed with schizophrenia and mild mental retardation.  Following his evaluation, Dr. Mings concluded that Defendant was not competent to proceed.

Dr. Mings based his opinion on two intertwined but separate issues: (1) Defendant's intellectual limitations and (2) a psychotic disorder.  With respect to the first, Dr. Mings states "with all due respect to the staff at the Butner facility, there can be no reasonable doubt that the defendant suffers severe intellectual deficiencies that are in the mild to moderate mental retardation range."  According to Dr. Mings, all of Defendant's prior history is consistent with Seatac's finding of an IQ level of 56.  The issue of psychosis is not as clear, but Dr. Mings believes the evidence does support the existence of such a condition.  He finds it significant that Defendant has exhibited bizarre behavior intermittently throughout his incarceration and has been treated with antipsychotic medication by psychiatrists at several facilities.  This, he insists, is inconsistent with concerns of malingering.  With respect to Butner's diagnosis, Dr. Mings strongly disagrees that Defendant's lack of cooperation at that facility means the Defendant suffers neither mental retardation nor psychotic mental illness.  Rather, Dr. Mings concluded that he was "quite confident the defendant suffers mild to moderate mental retardation, and very likely also suffers from a psychotic illness which is probably some sort of schizophrenia."

Factually, the stage is now set for the final two competing opinions voiced at the evidentiary competency hearing in this case – the April 2007 Springfield report authored by Dr. DeMier and the Mings follow-up report in May.

Defendant was evaluated by the Springfield staff from February 2 through March 28, 2007. He was observed and interviewed on numerous occasions, and Defendant's prior records were reviewed. Staff also listened to several of the telephone calls which Defendant made while at Springfield. He was administered one psychological test, the Validity Indicator Profile (VIP). Attempts to administer other tests were unsuccessful due to Defendant's lack of cooperation. He exhibited disruptive behavior throughout his stay and was never allowed into the general population. In essence, the Springfield report confirmed the Butner diagnosis and disputed the Seatac report and other indicia of mental retardation. It also ruled out schizophrenia. At the hearing, Dr. DeMier admitted that it was difficult to assess Defendant's actual intellectual capacity because of his refusal to cooperate, but he believed it to be higher than the 56 suggested by Seatac and others. He did admit that if Defendant's IQ were in the mid-50s to low 60s he would be considered mentally retarded and not competent to proceed.

In his May 2007 report, Dr. Mings strongly disagreed with this assessment, especially with regard to the mental retardation aspect of Defendant's condition. Dr. Mings found that Defendant's school records were especially significant, as they showed he had been in educable mentally handicapped classes since age 7, long before he had anything to gain by faking mental health issues. This fact, as well as other corroborating evaluations (Danzinger and Seatac), leads Dr. Mings to the conclusion that Defendant's intellectual impairment is severe and persistent, regardless of any recent attempts to malinger. Moreover, Dr. Mings administered the "Test of Memory Malingering" and Defendant's score was consistent with mental retardation, not malingering. In Dr. Mings' opinion, there is no doubt that Defendant is mentally retarded and therefore incompetent to stand trial.

**III. The Legal Standard**

A criminal defendant may not be tried unless he is competent. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial. *Drope v. Missouri*, 420 U.S. 162, 171 (1975). In *Dusky v. United States*, 362 U.S. 402 (1960), the Supreme Court held that, to determine competency, it was "not enough for the district judge to find that the defendant is oriented to time and place and has some recollection of events". *Id.* at 402 (internal quotations omitted). Rather, the court held, the test "must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Id.* The competency standard for pleading guilty or waiving the right to counsel is the same as the competency standard for standing trial. *Godinez*, 509 U.S. at 397.

Under federal law, the parties or the Court may require a determination as to the Defendant's competence to stand trial whenever reasonable cause exits to believe that the defendant is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. 18 U.S.C. § 4241(a). If, after an evidentiary hearing on the matter, the Court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. 18 U.S.C. § 4241(d). The Attorney General shall hospitalize the defendant for such a reasonable

period, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit the proceedings to go forward, and for an additional reasonable period until the defendant's mental condition is so improved or the pending charges are disposed of according to law.  18 U.S.C. § 4241(d).

**IV. Analysis**

Assessing the Defendant's competency requires consideration of two separate but related issues: (1) psychotic illness and (2) mental retardation.

With respect to the first, several mental health professionals have concluded that Defendant is psychotic, suffering from paranoid schizophrenia.  Medical professionals have routinely administered antipsychotic drugs to treat this condition.  However, the staff at Butner and Springfield believe that Defendant has grossly exaggerated his symptoms.  Rather than suffering from paranoid schizophrenia, they contend that Defendant is malingering.  Even Dr. Mings conceded that, in this area, Defendant was much improved during his second visit.  Dr. Mings also downplayed the role of psychosis in his competency conclusion.  Although this is a close question, the Court finds that the preponderance of the evidence supports the government's position that Defendant is malingering with respect to his psychotic presentation.[1]

Defendant's mental capacity, however, is another matter.  Defendant has a long-documented history of mental retardation.  Early on, Dr. Danzinger estimated Defendant's IQ to be

---

[1] Of course, it is possible that Defendant is both psychotic and malingering.  But when Defendant's symptoms are discounted as exaggerations, no basis remains to conclude that he is indeed psychotic.

in the mid-50s. The objective testing administered at Seatac confirms this,[2] and Dr. Mings strongly agrees. Because Defendant refused to cooperate with the staff at Butner and Springfield, these facilities were unable to obtain any objective IQ testing data. As a result, they simply diagnosed Defendant with malingering and opined, based on subjective observations, that his IQ was higher, probably in the 70-80 range.[3] This opinion, however, is not scientifically based and can generally be described as an educated guess.

It is possible, of course, for a mentally retarded individual to malinger. As Dr. Mings pointed out, the desire to manipulate the environment to obtain selfish goals is part of human nature, and attempts to do so begin in childhood. Thus, Defendant's refusal to cooperate at Butner and Springfield does not logically support the conclusion that he is not mentally retarded.[4]

In sum, Defendant's failure to cooperate (malingering) at Butner and Springfield does not negate Defendant's history of mental retardation, nor does it refute the objective test data obtained at Seatac. The Court therefore finds that Defendant likely has an IQ below 60, which is categorized as mild to moderate mental retardation. All the health care professionals, including Dr. DeMier, agree that a person with an IQ this low is not competent to stand trial

---

[2]The Springfield report suggests that the Seatac IQ test results should be disregarded because of his malingering at Butner. The Court disagrees. Although Defendant showed "less than optimal motivation" and "required encouragement" during administration of the tests at Seatac, the staff judged the results "to be an accurate estimate of his true functioning." (Nov. 14, 2005 report at p. 11).

[3]Dr. DeMier admitted that he does not know what Defendant's IQ actually is. His opinion that it is higher than the 56 score recorded at Seatac is based in part on the recorded telephone conversations made by Defendant while at Springfield. The Court has listened to these calls, and they do not persuade the Court that Defendant has a mental capacity above the retardation level.

[4]The evidence clearly shows that Defendant took a disliking to Dr. DeMier, and this may account for his failure to cooperate with him. No such personal animosity was noted at Seatac.

## V. Conclusion

By reason of his mental retardation, Defendant is not competent to stand trial for the crimes alleged, and there is no reasonable prospect that he ever will be. Further "treatment" to restore competency is not an option. However, there is also evidence that Defendant is not presently competent to live independently in a civilized society with any expectation that he will abide by the rule of law. Dismissing the charges and setting him free will honor his individual constitutional rights, but may put society at further risk.

18 U.S.C. § 4241(d) provides that, "[i]f, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of section 4246." 18 U.S.C. § 4246 governs hospitalization of a person due for release but suffering from a mental disease or defect. It provides, in pertinent part, that if the director of the facility certifies that (1) the person "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another" and (2) suitable arrangements for State custody and care of the person are not available, the court shall order a hearing to determine whether the person ought to be committed rather than released. 18 U.S.C. § 4246(a), (d).

Accordingly, Defendant is remanded to the custody of the Attorney General for placement at a suitable facility to determine whether Defendant is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another and whether suitable arrangements for state

custody and care of the Defendant is available.[5] The director of the facility shall transmit the Section 4246 certificate to this Court within 90 days.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 28, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant

---

[5] In light of the history of prior evaluations, the parties agree that Seatac (rather than Butner or Springfield) would be an appropriate facility for this purpose.